THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
TIMOTHY DURK, Defendant-Appellant.

Fourth District   No. 4—89—0677

Opinion filed March 8, 1990.

Daniel D. Yuhas and Karen Munoz, both of State Appellate Defender's Office, of Springfield, for appellant.

Scott H. Walden, State's Attorney, of Quincy (Kenneth R. Boyle, Robert J. Biderman, and Peter C. Drummond, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In April 1987, defendant pled guilty to one count of forgery (Ill. Rev. Stat. 1985, ch. 38, par. 17—3). In June 1987, he was sentenced to 30 months' probation. In October 1988, the State filed a petition to revoke defendant's probation. After finding defendant violated conditions of his probation, the court resentenced defendant to 30 months' probation. In June 1989, a second petition to revoke probation was filed. The court again found that defendant violated conditions of his probation. In August 1989, the court revoked defendant's probation and sentenced him to four years' imprisonment.

On appeal, defendant argues (1) at the second probation revocation hearing, the State's evidence was insufficient to prove by a preponderance of the evidence that he violated conditions of his probation, and (2) the sentencing order should be amended to give defendant credit for time served on the forgery offense.

In the petition to revoke probation filed in June 1989, the State alleged that defendant violated the terms of his probation by committing the offense of unlawful delivery of a controlled substance, lysergic acid diethylamide (LSD), to confidential informant and convicted felon Lorana Boll. At the hearing on this petition, defendant stipulated to the fact that the substance Boll delivered to State Police Department of Criminal Investigation (DCI) agents was LSD and that the chain of custody was intact. Gerald Kempf, a sergeant with DCI, testified he had previously used Boll as a confidential source for drug buys. She was paid for information and services she provided to DCI.

Kempf also testified that Boll was reliable and the information she provided to DCI led to approximately a dozen arrests.

On the date in question, October 31, 1988, Boll informed DCI that defendant was in possession of LSD. Arrangements were then made to make a drug buy from defendant. Before the buy, the police searched Boll for drugs or money but found none. Boll was given $10, and she and Kempf drove to the area of Fourth and Spring in Quincy, Illinois.

Kempf testified that they arrived at the location at 1:44 p.m. He saw Boll enter an apartment building. Around 1:46 p.m., he saw Boll exit the building and return to the car. He never saw defendant. He drove a few blocks, met with a surveillance agent, and turned Boll over to Lee Mangold, an inspector with DCI.

Kempf testified that when they returned to the DCI office, Mangold produced two "hits" of LSD. Boll was searched again to determine if she was in possession of any drugs or money. Neither was found.

On cross-examination, Kempf testified the "hits" were very small and that he did not see defendant on the date in question. He also testified that normally in a drug investigation, a second buy would be attempted. However, none was attempted here.

Boll testified that on October 31, 1988, she drove to 436 North Fourth Street looking for drugs. She had previously purchased drugs from that location. She knocked on the door of an apartment and defendant answered. She asked defendant if there were any drugs around, and he said he had two "hits" of "acid" (LSD). Boll told him she would be back as soon as she got some money. She then went to the DCI office. Later that day, Boll went back to the apartment, knocked on the door, bought two "hits" of LSD from defendant, and left.

Boll admitted that on October 31, 1988, she was working as a DCI agent and she was on probation. She also stated she was a drug user and worked for DCI to make money. Boll testified that prior to the date in question, she had not purchased drugs from defendant.

Mangold corroborated much of Boll's testimony. Like Kempf, he believed Boll to be reliable. He stated that he had worked with Boll between 18 and 20 occasions.

Defendant testified he never lived at 436 North Fourth Street. He also denied delivering or selling LSD to Boll. Defendant stated he lived at 2529 Vermont Street in the garage of a residence owned by Dr. Davis.

■ In a proceeding to revoke probation, the State must prove the

allegations of a petition to revoke probation by a preponderance of the evidence (Ill. Rev. Stat. 1987, ch. 38, par. 1005—6—4(c)). On review, a finding to revoke probation will not be disturbed unless it is contrary to the manifest weight of the evidence. (*People v. Matthews* (1988), 165 Ill. App. 3d 342, 344, 519 N.E.2d 126, 128.) A finding is against the manifest weight of the evidence only if a contrary result is clearly evident. *Matthews*, 165 Ill. App. 3d at 344-45, 519 N.E.2d at 128.

■ In the present case, Boll's testimony was a direct account of the drug buy. Despite her status as an informant, drug user, and convicted felon, the court could have believed her if it so chose. Her testimony was partially corroborated. In addition, Kempf and Mangold testified that Boll was reliable. The only conflicting evidence was defendant's own testimony. However, conflicting evidence alone is insufficient to overcome a finding of a violation of probationary conditions. *People v. Whitfield* (1986), 147 Ill. App. 3d 675, 679, 498 N.E.2d 262, 265.

The trial court is in a far better position than this court to weigh the credibility of the witnesses. We cannot say on this record that the trial court's finding was contrary to the manifest weight of the evidence.

■ Defendant also argues on appeal that the sentencing order should be amended to give him credit for all the time he has served in jail on the forgery offense. Defendant is clearly entitled to such credit. See Ill. Rev. Stat. 1987, ch. 38, par. 1005—8—7; *People v. Willer* (1985), 132 Ill. App. 3d 63, 476 N.E.2d 1385.

In the record before us there are three separate written orders pertaining to defendant's sentence. The first order is contained in a handwritten document of the trial judge, filed August 29, 1989, in which the defendant is sentenced to the Department of Corrections for a period of four years for the offense of forgery. That document further provides that the defendant shall receive credit for time served since the filing of the petition to revoke probation on June 28, 1989, "as well as any other time spent in the Adams County jail on *this offense*." (Emphasis added.) The suggestion, of course, from the trial court's mentioning "this offense" is that there were other, unrelated charges pending at some point against defendant.

The second document is entitled "JUDGMENT OF SENTENCE" and was filed August 31, 1989, under the seal and signature of the clerk of the circuit court. This document does not bear the signature of the trial court. This document similarly shows defendant sentenced to four years in the Department of Corrections "with credit for time

served since filing the pet[.] to revoke on 6/28/89."

The third document is entitled "ORDER AND JUDGMENT ON SENTENCE" and was filed September 5, 1989. It is signed by the trial judge. That document speaks of the defendant's sentence of four years to the Department of Corrections and states that he should receive "credit for time served since filing the petition to Revoke Probation on June 28, 1989, as well as any other time spent in the Adams County jail on this offense."

The issue being raised on appeal concerns 14 days defendant served in March 1987 on periodic imprisonment, allegedly due to this forgery conviction, and some additional time served in 1988 after he was arrested on the first petition to revoke probation and before he posted bond.

■ This record and these claims demonstrate why sentencing orders should set forth the specific number of days for which the defendant is to be given credit on any sentence to the Department of Corrections, instead of referring to "credit for all time served." To avoid problems such as have arisen here, the better practice is for the trial court, immediately after pronouncing a sentence to the Department of Corrections, to raise the issue of how much credit the defendant is due for time previously served.

Additionally, the trial court might establish a procedure in which some person or agency, such as the probation office, if a presentence investigation is ordered, or the State's Attorney's office, if there is to be no presentence report, would be responsible for ascertaining in the first instance the specific number of days spent in custody by the defendant on the particular offense for which the defendant is entitled to credit under Illinois law. When a presentence report is prepared, that report should routinely contain the dates on which the defendant was in jail on the offense for which he is to be sentenced and a figure representing the total number of such days. When this figure has been presented to the court by such an agency or person, defense counsel should be asked whether he or she agrees or disagrees with the figure proposed. If there is disagreement, then the court should be able to resolve the matter upon brief further inquiry. If there is agreement, then the sentencing order should reflect the specific number of days of credit. If these procedures were implemented, questions on appeal such as those now before us should simply not arise.

This court has previously expressed its concern about sentencing orders that do not specify the number of days for which defendant should be given credit against a sentence of incarceration (*Willer*, 132 Ill. App. 3d at 66-67, 476 N.E.2d at 1388), and we hope that the guid-

ance provided in this opinion will abate the need for remandments for further sentencing proceedings. We emphasize that, while the statutes may not be clear as to who is to determine how much credit is due a defendant, Illinois law is clear that it is the trial judge who has the responsibility for the sentencing order.

■■ Because of the uncertainties in the present case regarding credit for time served, we remand with directions to the trial court to conduct a hearing to determine the specific number of days to which the defendant is entitled and to enter an amended sentencing order accordingly.

Affirmed in part; vacated in part and remanded with directions.

SPITZ and McCULLOUGH, JJ., concur.