NOTICE
This Order was filed under
Supreme Court Rule 23 and
is not precedent except in
the limited circumstances
allowed under Rule
23(e)(1).

2021 IL App (4th) 180590-U

NO. 4-18-0590

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
February 5, 2021
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Champaign County |
| PAUL B. FOSTER, | ) | No. 17CF590 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Thomas J. Difanis, |
| | ) | Judge Presiding. |

JUSTICE CAVANAGH delivered the judgment of the court.
Justices DeArmond and Holder White concurred in the judgment.

**ORDER**

¶ 1    *Held*: (1) Where the evidence demonstrated defendant failed to comply with his probationary conditions, the trial court's decision to revoke his probation was not against the manifest weight of the evidence.

(2) The trial court did not err in resentencing defendant to three years in prison upon the revocation of his probation for defendant's Class 2 aggravated-domestic-battery conviction.

¶ 2    In November 2017, defendant, Paul B. Foster, pleaded guilty to one count of aggravated domestic battery. The trial court sentenced him to 30 months' probation. In April 2018, the State filed a petition to revoke defendant's probation. After a hearing, the court found defendant had violated certain terms and conditions and later resentenced him to three years in prison.

¶ 3    Defendant appeals, claiming the trial court erred in (1) revoking his probation when the alleged violation involved defendant's failure to pay without a showing it was willful and

(2) resentencing defendant to three years in prison without considering defendant's rehabilitative potential. We affirm.

¶ 4                                    I. BACKGROUND

¶ 5        In May 2017, the State charged defendant with home invasion (720 ILCS 5/19-6(a)(2) (West 2016)) (count one), two counts of aggravated domestic battery (720 ILCS 5/12-3.3(a-5) (West 2016)) (counts two and five), robbery (720 ILCS 5/18-1(a) (West 2016)) (count three), and criminal damage to property (720 ILCS 5/21-1(a)(1) (West 2016)) (count four). The charges stemmed from incidents occurring on April 28, 2017, and April 29, 2017, during an ensuing argument between defendant and his ex-girlfriend. Defendant punched the victim in the head and choked her. The victim broke defendant's watch and he broke her cellular telephone. Defendant left the residence without police involvement. The next day, defendant's sister went to the victim's apartment under the pretense of gathering defendant's belongings. When the victim opened the door, defendant, his sister, and another male acquaintance forced their way into the victim's apartment. Defendant ransacked the victim's bedroom looking for money. The victim tried to call the police from her laptop, but defendant took it from her and destroyed it. Defendant took money the victim had hidden in the kitchen. Defendant struck the victim multiple times and again choked her. The three suspects fled, and the police arrived.

¶ 6        On November 17, 2017, defendant pleaded guilty to one count of aggravated domestic battery (count two) in exchange for the dismissal of the other counts. The trial court accepted the State's recommendation and sentenced defendant to 30 months' probation. Along with the standard conditions, defendant was to enroll in a partner-abuse-intervention program within 60 days.

¶ 7        In April 2018, the State filed a petition to revoke defendant's probation, alleging he (1) failed to enroll in the partner-abuse-intervention program within 60 days and (2) committed a theft, a Class 3 felony, by stealing over $500 from Campus Pantry liquor store. At the hearing on the State's petition, Lacey Busboom, defendant's probation officer, testified defendant had been ordered to enroll in the partner-abuse-intervention program within 60 days of sentencing. When Busboom met with defendant in November 2017 to complete the referrals for the required services, defendant asked that his probation be transferred to Cook County where his parents resided. Busboom completed the transfer paperwork. However, defendant returned to Champaign County in January 2018. On January 8, 2018, Busboom met with defendant and completed a referral to the partner-abuse-intervention program. Because 60 days had passed, Busboom agreed to give defendant an additional 30 days to enroll. At the time of the hearing, on April 16, 2018, Busboom had not received verification that defendant had yet enrolled.

¶ 8        On cross-examination, Busboom acknowledged the program was not free, as it required a $50 intake fee and $17 per week for 25 weeks. Defendant's counsel asked Busboom if defendant had advised he was unemployed. Busboom testified that, according to defendant, he was "working a cash job stocking liquor at a liquor store."

¶ 9        On redirect examination, Busboom testified defendant indicated he was "struggling financially at the time" but Busboom "told him to do the best he could" and to keep working on employment. Defendant told Busboom he had several interviews.

¶ 10        Defendant testified he told Busboom he "was in the process of being employed," though he "knew that employment was guaranteed because [he] was previously employed before [he] got incarcerated[.]" He said he did not enroll in the partner-abuse-intervention program

because he "had financial problems at the time, and [he] just moved back to Champaign, just paid [his] rent. [He] wasn't able to do to all of the classes due to financial problems."

¶ 11    On cross-examination, defendant acknowledged he understood the requirements associated with his imposed probation. He admitted he had not enrolled in the partner-abuse-intervention program in a timely manner. According to defendant, the Cook County probation officer had not contacted him until he returned to Champaign, and "that's when [Busboom] went ahead and gave [him] the continuance." Defendant also admitted he was employed at Campus Pantry in Champaign "by February 2018," which, he said, "didn't even last a whole month."

¶ 12    The trial court commended defendant for contacting Busboom upon his return to Champaign County but also noted that, "since the time of his plea to the time of his subsequent employment with Campus Pantry, he made no attempt to get himself enrolled in the program." The court found the State had sufficiently proved the alleged violation.

¶ 13    In May 2018, the trial court conducted a resentencing hearing. The court noted it had reviewed the presentence investigation report. The State presented the testimony of Champaign police detective Jeremiah Christian, who testified that an armed robbery had occurred at Campus Pantry on February 20, 2018. The suspect removed $885 from the cash register. The employees identified defendant as the suspect, and he was arrested. Christian could not positively identify defendant in the video of the robbery, but he noted similarities between shoe prints found at the scene and shoes in which defendant had been photographed. He also noted the suspect appeared to know how to open the cash register with a computerized touchscreen, as if the suspect had worked at the store. The manager of the store told Christian defendant left his employment at Campus Pantry due to a theft.

¶ 14        The State next presented the testimony of Champaign County Sheriff's Office Sergeant Josh Jones, who testified he worked in the corrections division. On April 14, 2018, an altercation involving defendant occurred at the jail. According to Jones, it appeared from the video of the incident that three inmates forced the victim into a cell where defendant was waiting to assault him. When the victim broke free from the group and exited the cell, defendant followed and appeared to continue to engage the victim in a fight.

¶ 15        As evidence in mitigation, defendant presented letters to the court verifying he was actively seeking employment while on probation, a letter from the original victim, and a letter from an inmate who was present during the April 14, 2018, fracas at the jail. In addition, defendant testified he acted in self-defense against the inmate in his cell. He said he did not have anything to do with the victim being dragged into his cell.

¶ 16        The State recommended a sentence of six years, while defendant recommended probation. Defendant told the trial court he did not have the money to enroll in treatment, he was employed at Campus Pantry on "an on-call" basis for less than a month, he worked for two weeks at Rantoul Foods until he was arrested for the Campus Pantry robbery, and after that, "everything just went down the drain."

¶ 17        The trial court indicated it had reviewed the presentence investigation report, the factors in aggravation and mitigation, the evidence presented, defendant's statement in allocution, and the parties' recommendations. The court noted the following factors in mitigation: (1) defendant's age (he was 22 years old), (2) his lack of any criminal convictions, (3) his previous employment, (4) his level of education (he had participated in some college classes), and (5) he had no children to support. The court found the only statutory factor in aggravation was the

deterrent factor. After due consideration of all the above, the court sentenced defendant to three years in prison. The court denied defendant's motion to reconsider his sentence.

¶ 18    This appeal followed.

¶ 19                              II. ANALYSIS

¶ 20                          A. Revocation of Probation

¶ 21    Defendant claims the trial court erred in revoking his probation for failing to enroll in partner-abuse-intervention classes because the State's evidence did not prove he willfully failed to do so. He claims he demonstrated that he lacked sufficient funds. We disagree.

¶ 22    "A probation revocation proceeding is in the nature of a civil proceeding arising in the wake of a previous conviction and sentence of probation, and the violation of previously imposed conditions of probation, not the commission of a culpable offense, must be proved." *People v. Williams*, 303 Ill. App. 3d 264, 267 (1999). The State has the burden of proving the probation violation by a preponderance of the evidence. *Id.*; 730 ILCS 5/5-6-4(c) (West 2016).

¶ 23    We will not disturb a trial court's finding in a proceeding to revoke probation unless it is against the manifest weight of the evidence. *Williams*, 303 Ill. App. 3d at 267. A finding is against the manifest weight of the evidence only if a contrary result is clearly evident. *People v. Durk*, 195 Ill. App. 3d 335, 338 (1990).

¶ 24    According to section 5-6-4(d) of the Unified Code of Corrections (730 ILCS 5/5-6-4(d) (West 2016)), a term of probation "shall not be revoked for failure to comply with conditions of a sentence or supervision, which imposes financial obligations upon the offender unless such failure is due to his willful refusal to pay." "Financial obligations" include the costs of an evaluation or treatment. *People v. Clark*, 313 Ill. App. 3d 957, 962 (2000). "Willful failure to pay means a voluntary, conscious and intentional failure." *People v. Davis*, 216 Ill. App. 3d 884,

888 (1991). "Willfulness generally may be inferred from the actor's conduct and from other circumstances." *People v. Clark*, 268 Ill. App. 3d 810, 814 (1995).

¶ 25    Indeed, this court has stated "the supreme court has made it clear that it is incumbent upon the State to prove that a defendant's failure to comply with financial conditions of a sentence of probation was a wi[l]lful refusal to pay before probation can be revoked for such failure to comply." *People v. Holt*, 151 Ill. App. 3d 337, 339 (1986) (citing *People v. Boucher*, 57 Ill. 2d 225, 228 (1974) and *People v. Harder*, 59 Ill. 2d 563, 567 (1975)).

¶ 26    Here, the trial court sentenced defendant to probation on November 17, 2017. On November 21, 2017, defendant met with Busboom to review the conditions of his probation. At that meeting, Busboom prepared documents to transfer defendant's probation to Cook County. Apparently, no one from Cook County contacted defendant before he transferred back to Champaign County. On January 8, 2018, Busboom met with defendant and completed a referral to the partner-abuse-intervention program and gave him an additional 30 days to enroll.

¶ 27    Defendant was arrested on April 2, 2018, on burglary charges and was taken into custody. Between November 17, 2017, and April 2, 2018, for a total of 135 days, defendant made no attempt to enroll in the partner-abuse-intervention program. Although defendant told Busboom he was "struggling financially," he did not say he was unable to pay for the program. According to the evidence presented, he was employed at least sporadically within that timeframe at Campus Pantry and/or Rantoul Foods and he told Busboom he had several interviews. Defendant himself testified "employment was guaranteed because [he] was previously employed before [he] got incarcerated in the county last year." He admitted he was employed at Campus Pantry "by February 2018."

¶ 28    The evidence in this case indicates defendant did not even attempt to comply with his terms of probation. He did not have any dependents and he was apparently physically and mentally able to work. He demonstrated by his nonaction he did not consider the probation obligation to be a priority. Based on the above, the trial court's decision to revoke defendant's probation was not against the manifest weight of the evidence.

¶ 29                            B. Resentencing

¶ 30    Defendant next contends his three-year sentence is excessive given his rehabilitation potential and the lack of any aggravating factor, other than deterrence. Defendant claims the trial court "improperly punish[ed] him for the conduct he allegedly committed while on probation instead of sentencing him for the underlying offense." We disagree.

¶ 31    The record in this case clearly shows the trial court sentenced defendant on the underlying Class 2 felony of aggravated domestic battery (720 ILCS 5/12-3.3(b) (West 2016)). The court specifically acknowledged the underlying crime by reiterating its obligation "to fashion a sentence that will not only deter this defendant, but other individuals similarly situated from committing this type of an offense, and aggravated domestic battery or any domestic battery is a deterrable offense." It was clear from the court's comment it sentenced defendant on his aggravated-domestic-battery conviction, which had a potential range of punishment of three to seven years in prison (730 ILCS 5/5-4.5-35(a) (West 2016)).

¶ 32    However, the trial court is allowed to consider defendant's conduct on probation when assessing his potential for rehabilitation. *People v. Jones*, 172 Ill. App. 3d 1048, 1050 (1988). Here, the trial court heard testimony about defendant's arrest for the armed robbery at Campus Pantry, and the officer's belief that it was indeed defendant on the video of the incident. The court also heard testimony about defendant's involvement in an altercation at the jail. Again, defendant

was captured on video chasing after the victim and was identified by witnesses as being involved. There was no error in the court considering this additional conduct.

¶ 33　　　　　It is well established that "[a] sentence within the statutory limits for the offense will not be disturbed unless the trial court abused its discretion," which occurs when "the trial court imposes a sentence that is greatly at variance with the spirit and purpose of the law[ ] or is manifestly disproportionate to the crime." *People v. Watt*, 2013 IL App (2d) 120183, ¶ 49. "A trial court has wide latitude in sentencing a defendant, so long as it neither ignores relevant mitigating factors nor considers improper factors in aggravation." *People v. Roberts*, 338 Ill. App. 3d 245, 251 (2003). It has been observed that "[t]he Illinois Constitution mandates the balancing of both retributive and rehabilitative purposes of punishment." *People v. Evans*, 373 Ill. App. 3d 948, 967 (2007). Accordingly, "[t]he trial court is therefore required to consider both the seriousness of the offense and the likelihood of restoring the offender to useful citizenship." *Id.* The court is required to consider all factors in aggravation and mitigation. *Id.* "A sentence must be based on the particular circumstances of each case and depends on many factors, including the defendant's criminal history *** and the need to protect the public and provide a deterrent to crime." *People v. Jones*, 2019 IL App (1st) 170478, ¶ 49.

¶ 34　　　　　Given these parameters, we find no error. The record before us clearly demonstrates that, based on the totality of the evidence, the nature of the crime, and the factors to be considered, the trial court did not abuse its discretion in sentencing defendant to the minimum prison sentence of three years with credit for 256 days' time served.

¶ 35　　　　　　　　　　　　　III. CONCLUSION

¶ 36　　　　　For the foregoing reasons, we affirm the trial court's judgment.

¶ 37　　　　　Affirmed.