NOTICE

Decision filed 04/14/25, corrected 04/15/25. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2025 IL App (5th) 240840-U

NO. 5-24-0840

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Champaign County. |
| | ) | |
| v. | ) | No. 21-CF-626 |
| | ) | |
| MICHAEL C. DAVIS, | ) | Honorable |
| | ) | Roger B. Webber, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE MOORE delivered the judgment of the court.
Justices Vaughan and Sholar concurred in the judgment.

**ORDER**

¶ 1   *Held*:   Where the circuit court did not abuse its discretion in sentencing the defendant to 64 months in prison for harassment through electronic communications, and where there are no other issues of arguable merit to challenge the circuit court's judgment of conviction and sentence, the defendant's appellate counsel is granted leave to withdraw, and the circuit court's judgment is affirmed.

¶ 2   The defendant, Michael C. Davis, pleaded guilty to harassment through electronic communications and was sentenced to one year of conditional discharge. Later, his conditional discharge was revoked, and he was sentenced to 64 months in prison. He then filed a motion to reconsider sentence, which the circuit court denied, and he now appeals from that denial order. His appointed counsel on appeal, the Office of the State Appellate Defender (OSAD), has concluded that this appeal lacks merit and has filed a motion to withdraw as counsel, along with a supporting brief. See *Anders v. California*, 386 U.S. 738 (1967). OSAD duly served the defendant with a copy

1

of its *Anders* motion and brief, and this court granted him ample opportunity to file a *pro se* brief, memorandum, or other document explaining why OSAD should not be allowed to withdraw or why this appeal has merit, but the defendant has not filed any type of response. This court has examined OSAD's *Anders* motion and brief, as well as the entire record on appeal. For the following reasons, this court agrees with OSAD that this appeal lacks merit. Accordingly, this court must grant the *Anders* motion and must affirm the circuit court's judgment of conviction and sentence.

¶ 3                                    BACKGROUND

¶ 4    The defendant was charged by information with harassment through electronic communications, a Class 4 felony. See 720 ILCS 5/26.5-3(a)(5), 26.5-5(b)(4) (West 2020). It was alleged that in June 2021, the defendant had used electronic communications in order to threaten injury to, and threaten to kill, Jennifer Arnett. He was eligible for an extended-term sentence of three to six years. See 730 ILCS 5/5-4.5-45(a) (West 2020). A misdemeanor offense was also charged in that same information. The public defender was appointed for the defendant.

¶ 5    In July 2021, the defendant, an assistant public defender who represented him, and an assistant State's attorney appeared before the circuit court. It was announced that the parties had reached a fully-negotiated plea agreement. Under the agreement's terms, the defendant would plead guilty to harassment through electronic communications and would be sentenced to conditional discharge for a period of 12 months, while the misdemeanor offense in this case, and all the charges in two other cases, would be dismissed.

¶ 6    Upon hearing of the plea agreement, the court fully admonished the 43-year-old defendant as to the nature of the charge of harassment through electronic communications; the sentencing possibilities, including imprisonment for an extended term of up to six years; the right to plead not

2

guilty or guilty; and a guilty plea's serving as a waiver of the right to trial. The court determined that the defendant understood all of these matters. See Ill. S. Ct. R. 402(a) (eff. July 1, 2012). The defendant pleaded guilty to harassment through electronic communications. The court determined that his plea was voluntary. See Ill. S. Ct. R. 402(b) (eff. July 1, 2012). The defendant also acknowledged his signature on a written waiver of jury. A factual basis for the plea was provided by the State. See Ill. S. Ct. R. 402(c) (eff. July 1, 2012). Essentially, the defendant had sent text messages, and had made "approximately 39" telephone calls, to Jennifer Arnett, and these had included a threat to kill Arnett. Determining that there was a factual basis, and also finding that the plea was knowing, intelligent, and voluntary, the court accepted the defendant's plea and entered judgment thereon. After the parties waived a presentence investigation report (PSI), the court imposed the agreed-upon sentence—conditional discharge for a period of 12 months. Conditions included the defendant's obtaining a substance-abuse evaluation and a mental-health evaluation. The misdemeanor offense in this case, and all the charges in the two other cases that accompanied this one, were dismissed. Finally, the court asked the defendant whether he had heard the court admonish a previous defendant as to his appeal rights, pursuant to Illinois Supreme Court Rule 605 (eff. Oct. 1, 2001). The defendant indicated that he had heard and understood those rights, and that he did not have any questions about them or about how to begin the appeal process. (The record on appeal does not include the court's admonishments to that previous defendant.)

¶ 7    At no point did the defendant file a motion to withdraw his guilty plea. In March 2022— approximately eight months after the plea and sentencing—the State filed a petition to revoke the defendant's conditional discharge. In November 2022, the State filed an amended petition to revoke conditional discharge. The amended petition alleged that the defendant had violated a few

3

conditions of his conditional discharge—among them, that he had failed to obtain a substance-abuse evaluation.

¶ 8     The public defender was appointed for the defendant. An assistant public defender, other than the one who had represented him at the plea and sentencing, represented him at the revocation hearing and at the subsequent post-revocation sentencing hearing.

¶ 9     In December 2022, approximately 17 months after the defendant's plea and sentencing, the case was called for a hearing on the State's amended petition to revoke conditional discharge. Despite receiving notice of this revocation hearing, the defendant did not appear at it, and the hearing was held *in absentia*. The State announced that it would proceed only on that portion of its petition that alleged a failure to obtain a substance-abuse evaluation. A Champaign County probation officer, who oversaw the conditional-discharge cases, testified that she had not had any contact with the defendant, and she had not received any document indicating that he had obtained the substance-abuse evaluation required as a condition of his conditional discharge. The court found that the State had proved, by a preponderance of the evidence, that the defendant had failed to comply with that condition, and it revoked the defendant's conditional discharge.

¶ 10     A PSI was prepared by the Champaign County probation department and filed in July 2023. It showed that the defendant had a long and consistent history of prior convictions for felony, misdemeanor, and traffic offenses, dating back to the mid-1990s. Class 4 felonies and Class A misdemeanors predominated. The more recent convictions included criminal damage to property and felony theft.

¶ 11     In July 2023, the circuit court conducted a post-revocation sentencing hearing. The only witness to testify for the State was, Jennifer Arnett, the victim in the instant case. Arnett testified that she had been in a "relationship" with the defendant that lasted approximately four to five years.

4

For the first six months, the defendant lived with her. In 2019, when they were living together, she confronted him about his use of crack cocaine. He became angry and punched her, hard, "multiple times" on the head and back, causing "knots" on her head. Due to being "afraid," she did not inform the police. After that, he was physically violent toward her "[a]t least once a week, whenever he wanted drugs and didn't have money." The defendant punched and threw her to the floor regularly; he choked her much less often. Once, he hit her on the head with a cast-iron skillet. On several occasions, he stole cash from her personally or through an application on her cell phone. She tried repeatedly to break up with him. On four occasions, he flattened all four of the tires on her car, and he admitted it. In December 2020, she interrupted the defendant as he was placing her grandson's Christmas presents into a drug dealer's car. To recover her grandson's presents, she had to pay the drug dealer for the drugs he had just sold to the defendant. In June 2021, after she had told the defendant to leave her alone, she received 326 phone calls from the defendant during a period of four hours. She obtained an order of protection, but his behavior only worsened. In 2022, the defendant broke into her house, twice, once stealing a television set. While this case was pending, and as recently as three days before the resentencing hearing, the defendant telephoned her. Over the years, she had moved six times in attempts to free herself from the defendant. He caused her to feel unsafe and traumatized, even at the time of the hearing.

¶ 12    The defendant, in a statement in allocution, requested leniency because of his "addiction problem" and physical-health issues. (The PSI listed high blood pressure, diabetes, and sleep apnea as the defendant's physical-health problems.) He was "trying to do the things the right way," which was difficult due to his having "no family to support [him]."

¶ 13    The court found Arnett's testimony credible, and that she had endured a "reign of terror" at the hands of the defendant. In sentencing the defendant, the court read aloud from the PSI's list

of prior convictions of the defendant, which, the court said, showed "a consistent pattern of criminality." The defendant was sentenced to imprisonment for a term of 64 months, to be followed by mandatory supervised release for 6 months. The court commented that this sentence was necessary to deter others. At the end of the sentencing hearing, the court advised the defendant of his right to appeal, and of his rights and obligations associated with an appeal. The court's admonishments closely tracked the language of Illinois Supreme Court Rule 605(a) (eff. Oct. 1, 2001). The defendant indicated his understanding of the admonishments.

¶ 14    In August 2023, the defendant filed a *pro se* "motion for time reduction." The court once again appointed the public defender for the defendant. In January 2024, an assistant public defender—one different from those who had previously represented the defendant—filed on the defendant's behalf an amended motion to reconsider sentence. The focus of the amended motion was the sentence's alleged failure to reflect the defendant's rehabilitative potential. The assistant public defender also filed a certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. Dec. 7, 2023).

¶ 15    In July 2024, the circuit court held a hearing on the amended motion to reconsider sentence. No witnesses testified. Without objection, the defense made an offer of proof that consisted of the defendant's plentiful medical records, going back many years, that showed the defendant's many attempts at treatment for his substance-abuse and mental-health problems. According to the assistant public defender, the documents showed that the defendant had abused drugs since childhood and had been diagnosed with bipolar disorder in his twenties. The court, wanting to review those medical records, took the matter under advisement.

¶ 16    Two to three weeks after the hearing on the amended motion to reconsider, the court announced its findings and its ruling. The court found that the defendant had been "in and out" of

6

treatment, for both substance abuse and mental illness, during the entire time he was involved with Jennifer Arnett. While the defendant's longstanding drug and mental problems clearly contributed to his criminal behavior, the court stated, they did not outweigh the need to protect the public, and particularly Arnett, from his future criminal behavior. Accordingly, the court denied the defendant's amended motion for reconsideration of sentence.

¶ 17    From the denial order, the defendant filed a timely notice of appeal. OSAD was appointed to represent him.

¶ 18                                    ANALYSIS

¶ 19    As previously noted, OSAD has filed an *Anders* motion to withdraw as the defendant's counsel on appeal, and the defendant has not filed a response. In the brief supporting its motion, OSAD presents three potential issues on appeal and rejects each of them as lacking arguable merit. This court considers those three issues in turn. (OSAD, in its discussion of these issues, consistently refers to the defendant's original sentence of "probation." His original sentence was one year of conditional discharge, not probation.)

¶ 20    The first potential issue raised by OSAD in its *Anders* brief is whether the underlying judgment in the defendant's case—*i.e.*, the judgment of conviction that was entered after the defendant's guilty plea and the sentence of conditional discharge—is subject to attack in this appeal. When no appeal is taken from a judgment imposing a sentence of conditional discharge and the time for appeal has expired, a reviewing court has no jurisdiction to review that judgment in an appeal from the subsequent revocation of conditional discharge, unless the underlying judgment of conviction is somehow void. See *People v. Gregory*, 379 Ill. App. 3d 414, 418 (2008). In the instant case, the circuit court entered judgment on the plea and imposed the sentence of conditional discharge in July 2021, and the defendant never filed a notice of appeal from that

7

judgment. (After the plea and sentencing, the next document filed was the State's petition to revoke conditional discharge, which was filed in March 2022.) Consequently, the defendant can challenge the underlying judgment in the present appeal only if it is void. OSAD is correct in its conclusion that nothing in the record suggests that the underlying judgment is void, *i.e.*, nothing suggests that the judgment (1) was entered by a court that lacked either personal or subject-matter jurisdiction or (2) was based on a statute that was facially unconstitutional and void *ab initio*. See *People v. Abdullah*, 2019 IL 123492, ¶ 13. No meritorious challenge to the underlying judgment can be raised in this appeal.

¶ 21    The second potential issue raised by OSAD is whether the State proved that the defendant violated a condition of his conditional discharge. To meet its burden at a revocation hearing, the State must prove a violation by a preponderance of the evidence. See 730 ILCS 5/5-6-4(c) (West 2022). This court will not overturn a circuit court's decision to revoke a defendant's conditional discharge unless it is against the manifest weight of the evidence. See *People v. Clark*, 313 Ill. App. 3d 957, 959 (2000). "A finding is against the manifest weight of the evidence only if a contrary result is clearly evident." *People v. Durk*, 195 Ill. App. 3d 335, 338 (1990). Here, the revocation hearing was conducted 17 months after the defendant was sentenced to 12 months of conditional discharge. The probation officer who oversaw conditional-discharge cases testified that she had not had any contact with the defendant and had not received any kind of verification that he had obtained the substance-abuse evaluation as required. This testimony provided sufficient support for the circuit court's finding that the defendant had violated his conditional discharge by not obtaining such an evaluation.

¶ 22    OSAD's third and final potential issue is whether the circuit court abused its discretion in sentencing the defendant to imprisonment for 64 months for the offense of harassment through

8

electronic communications. When a court revokes a defendant's conditional discharge, the circuit court may impose any sentence that would have been appropriate for the original offense; it may not punish him for the behavior that gave rise to the revocation. See *People v. Hess*, 241 Ill. App. 3d 276, 284 (1993). Absent an abuse of discretion by the circuit court, "a sentence may not be altered upon review." *People v. Perruquet*, 68 Ill. 2d 149, 154 (1977). That is because the circuit court is "in a better position to determine the punishment to be imposed" than a reviewing court is, and the circuit court's sentencing decision is "entitled to great deference and weight." *Id.* "The abuse of discretion standard has been viewed as the most deferential standard of review available with the exception of no review at all." *People v. Etherton*, 2017 IL App (5th) 140427, ¶ 15. When a sentence falls within the statutory range, there exists no abuse of discretion unless the defendant's sentence is manifestly disproportionate to the nature of the offense. *People v. Stacey*, 193 Ill. 2d 203, 210 (2000).

¶ 23     The circuit court sentenced the defendant for a single count of harassment through electronic communications. That offense involves using electronic communications for the purpose of, *inter alia*, "[t]hreatening injury to the person or to the property of the person to whom an electronic communication is directed or to any of his or her family or household members." 720 ILCS 5/26.5-3(a)(5) (West 2020). If "[i]n the course of the offense, the offender threatened to kill the victim or any member of the victim's family or household," he is guilty of a Class 4 felony. *Id.* § 26.5-5(b)(4). A Class 4 felony is punishable by imprisonment for one to three years, or by probation or conditional discharge for up to 30 months. 730 ILCS 5/5-4.5-45(a), (d) (West 2020). The defendant was eligible for an extended-term prison sentence of three to six years. See *id.* § 5-4.5-45(a).

¶ 24    Here, the defendant was resentenced to 64 months, or 5⅓ years, in prison. Hence, his sentence fell within the statutory range. Furthermore, this sentence is not manifestly disproportionate to the nature of the offense. The defendant, in his electronic communications with Arnett, gave her the impression that he was stalking her, telling her that he had seen her in various places about town, and he threatened to kill her. This statement certainly would instill fear in Arnett, especially in light of the many instances of physical abuse—and the overall "reign of terror," to use the circuit court's term—that she had suffered at the hands of the defendant for years prior to the offense. There was no abuse of discretion in the court's sentencing of the defendant.

¶ 25                              CONCLUSION

¶ 26    Each of the potential issues raised by OSAD in its *Anders* brief is without arguable merit. Having examined the record on appeal, this court has been unable to identify any other issue that could disturb the judgment in this case. Accordingly, OSAD is granted leave to withdraw as appellate counsel, and the judgment of conviction and sentence is affirmed.


¶ 27    Motion granted; judgment affirmed.